UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES LEE MCCURIN,<br><br>Defendant. | No. 2:06-cr-00255-MCE<br><br>**ORDER** |

Presently before the Court is Defendant James Lee McCurin's ("Defendant") Motion to Revoke Detention Order (ECF No. 48) by which Defendant contends that in light of developments regarding the COVID-19 pandemic, he should be released based on his age (i.e., 62 years old) and status as a diabetic.[1]  For the following reasons, that Motion is DENIED.

///
///
///
///

---

[1] Defendant's Request to Seal Exhibit A - Mr. James Lee McCurin's Medical Records and Exhibit F - Presentence Investigation Report is GRANTED so that the medical information and Presentence Investigation Report are not available on the public docket.  The records are to be provided to the Court and opposing counsel and shall remain under seal until further Order of the Court.

1

**BACKGROUND**

In October 2006, Defendant pled guilty to Possession of Cocaine Base with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1). He was sentenced on April 24, 2007, to a prison term of one hundred and twenty (120) months followed by a sixty (60) month term of supervised release and was released in February 2015.

Defendant is now back in custody and charged by Petition (ECF No. 33) with violating the terms of his supervision. According to the Petition, on February 27, 2019, Defendant was arrested by California Highway Patrol officers after they observed the vehicle Defendant was driving speeding and weaving. During the course of that stop, a K-9 alerted to the vehicle, which led to a search that uncovered 7-9 ounces of individually packaged "crack" cocaine and $3,000 in currency in the center console.

Defendant completed a state custodial sentence before being remanded to federal custody this year. He made his initial appearance in this district on March 27, 2020, and a detention hearing was held that same day. The magistrate judge ordered further briefing, continued the matter, and eventually ordered Defendant detained on April 2, 2020. Defendant seeks de novo review of that decision here.

**ANALYSIS**

A person held in custody for violating probation or supervised release may be released or detained under 18 U.S.C. § 3143(a)(1). See Fed. R. Crim. P. 32.1(a)(6). "The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." Id.; see also 18 U.S.C. § 3143(a)(1) (Detention is mandatory "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)."). Having conducted an independent review of both the law and the

2

record in this case, the Court determines that detention is warranted.

The Court does not reach this conclusion lightly, given the "unprecedented magnitude of the COVID-19 pandemic." United States v. Martin, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020). "While correctional officials . . . may successfully have dealt with past viruses and outbreaks of communicable diseases, they pale in scope with the magnitude and speed of transmission of COVID-19." Id. "This virus comes in the form of a world-wide pandemic, resulting in a declaration of a national emergency by the federal government, and state of emergency by the State of [California]." Id. "With no known effective treatment, and vaccines months (or more) away, public health officials have been left to urge the public to practice 'social distancing,' frequent (and thorough) hand washing, and avoidance of close contact with others (in increasingly more restrictive terms)—all of which are extremely difficult to implement in a detention facility." Id. "For this reason, the Court takes this health risk extremely seriously . . . ." Id. Regardless, though, a determination of whether this Defendant should be released requires an individualized assessment of the relevant factors, which here point to the conclusion that Defendant poses a danger to the community and may be a flight risk.

Without more, the facts that Defendant is aging and has diabetes do not justify release. To the contrary, Defendant's arrest underlying the current petition occurred when he was already in his sixties, he had fairly recently served a ten-year sentence in the Bureau of Prisons, and he knew he was still under formal supervision. He was nonetheless caught speeding and weaving in and out of traffic with a significant amount of individually packaged crack cocaine and cash in his car. All of this exists against a backdrop of a criminal history dating back to the late 1970s. History indicates that Defendant will continue to traffic if released and thus he presents a substantial danger to the community. Indeed, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one." Id. at *4.

///

Moreover, the fact that this Defendant cannot be trusted to follow the law is no longer just a source of concern to the extent he may continue to contribute to the cycle of drugs and violence that accompany trafficking crimes. Instead, Defendant's unwillingness or inability to adhere to directives is now an even more fundamental danger to the community. The Government aptly made this point in briefing before the magistrate judge:

> The entire State of California is currently ordered to shelter in place and "heed the current State public health directives," indefinitely, to avoid the spread of COVID-19. California Executive Order N-33-20, available at https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf (issued March 19, 2020). Such rules, though enforced by peace officers, rely largely on voluntary obedience. A person who ignores such admonitions and rules could increase infection rates, leading to severe illness and death. [Defendant] has shown an unwillingness or inability to follow rules, and a disregard for the welfare of others, as the pending petition for supervised release demonstrates. More to the point, if released, asking a Probation Officer in the current environment to monitor someone of [Defendant's] criminal pedigree amounts to an impossible task.

Gov. Brief in Supp. of Det., ECF No. 45, at 4. Based on Defendant's repeated and extensive refusal to follow the criminal laws, the Court sees no reason that Defendant would choose to adhere to the essentially voluntary mandates currently governing our collective society, and releasing him now would thus pose even more of a danger to the public than it would absent the pandemic.[2]

---

[2] The Court also notes that Defendant has pointed to no authority or case-specific facts supporting the proposition that the existence of a pandemic itself, even when coupled which the facts that Defendant is over 60 and diabetic, provides a basis for release. As set forth previously by another court in this district, "although the COVID-19 situation is an extraordinary one for the population at large in this country, including prisoners, and without diminishing in the least the fact that [Defendant] is part of an especially at-risk COVID-19 population, [Defendant] has not shown that prison [or jail] authorities are unable or unwilling to address this serious problem within [facilities], or that [Defendant] is unable to take the general, protective measures applicable to all as of yet unafflicted persons, i.e., wash hands frequently, avoid touching the face and so forth." Peterson v. Diaz, Case No. 2:19-cv-01480, ECF No. 32, at 4. "Moreover, . . . authorities may be able to isolate highly at-risk prisoners, such as [Defendant], more easily than isolation or 'social distancing' is achieved in the general population, e.g., housing in administrative segregation, partial lockdowns or transfers." Id. "Prisons [and jails] are certainly able to order their afflicted employees to stay at home, and can probably, more easily find testing opportunities for their essential employees than is yet possible for the general population." Id. "Finally, prison and [other] officials are more likely to know who may be best subject to compassionate release under state laws than is the undersigned." Id. In light of all of the foregoing factors, and the fact Defendant has not pointed to

Nor can the forgoing risk be alleviated even by conditions as onerous as home confinement. Although Defendant contends his wife will "welcome" his return to their home, Def.'s Mot., ECF No. 48, at 3, this argument is especially problematic because release to his wife puts him right back where he was arrested with regard to his initial crack offense. Accordingly, the Court can think of no conditions of release that would address the dangers Defendant poses to the public. To that end, the Court agrees with the observations in Martin:

> While . . . location monitoring . . . may offer useful information about where [a defendant] is, it provides little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would make it all too easy for him to resume his involvement (directly or through confederates) in the distribution of controlled substances without detection. Moreover, location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing.

2020 WL 1274857, at *4. Not only would location monitoring not provide information on any potential, and likely, trafficking activities, it would provide no information as to third parties frequenting Defendant's residence in violation of social distancing requirements. It follows that Defendant has not met his burden of showing he is not a danger to the community or that any such danger could be alleviated by imposing specific conditions of release. If the knowledge that Defendant was on federal supervised release was not enough to dissuade him from continuing to engage in large-scale drug trafficking operations, especially at an age far mature enough to know better, the Court fails to see how the threat of contracting COVID-19, a threat that exists even in the community at large, will do the trick.

///

///

---

any diagnosed case of COVID-19 in the Sacramento County Jail in the first instance, general reliance on a pandemic to justify release is unpersuasive.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Revoke Detention Order, ECF No. 48, is DENIED, and his Request to Seal, ECF No. 49, is GRANTED.

IT IS SO ORDERED.

Dated: April 8, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE